**STATE, Plaintiff-Appellee, v. MARTIN, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2397.   Decided October 26, 1956.

Mathias H. Heck, Pros. Atty., Dayton, By Herbert M. Jacobson, First Asst., for plaintiff-appellee.

Jack H. Patricoff, Dayton, for defendant-appellant.

**OPINION**

By THE COURT:

Submitted on motion of plaintiff-appellee to dismiss the appeal on

the ground that appellant has failed to file assignments of error and brief with the transcript, pursuant to §2953.04 R. C.

The Supreme Court, in State v. Nickles, 159 Oh St 353 (1953), 112 N. E. (2d) 531, held that the provision in §2953.04 R. C., requiring the filing of the assignments of error and brief with the transcript in criminal cases is directory and not mandatory.

Motion overruled.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.

No. 2397.   Decided November 29, 1956.

Mathias H. Heck, Pros. Atty., Dayton, By Herbert M. Jacobson, First Asst. Atty., for plaintiff-appellee.

Jack H. Patricoff, W. Gale Everman, Dayton, for defendant-appellant.

(CONN, J, of the Sixth District, sitting by designation in the Second District.)

OPINION

By CONN, J.

The defendant was indicted at the September Term (1954) of the Grand Jury of Montgomery County for receiving and concealing stolen property, to which indictment said defendant pleaded not guilty. The sufficiency of the indictment was not raised by motion to quash or for bill of particulars.

Upon the trial in the court of common pleas, the jury returned a verdict of guilty as charged, and fixed the value of the property to be in the sum of $400.00. From the finding of the jury and judgment of the court thereon, defendant has appealed to this Court on questions of law, and grounds her appeal on the following assignments of error of the trial court, re-stated in abridged form, to-wit:

That the verdict of the jury is against the manifest weight of the evidence and contrary to law;

Failure of the trial court to sustain defendant's motion for dismissal of the case or to grant defendant a new trial;

Improper and prejudicial argument of the prosecuting attorney to the jury, which prevented defendant from having a new trial;

Evidence offered by the State was at variance with the allegations contained in the indictment, which constituted prejudice against defendant; and

For "irregularities in the proceedings of Sergeant Jack Peake while on the witness stand for the State of Ohio, by which defendant was prevented from having a fair trial."

The record is voluminous and it is impractical to review the evidence in detail and comment thereon.

The State called as its witnesses three young men, Richard Fry, Ray Walters and John Kraft, each approximately 18 years of age, who previously had been arrested on three felony charges, including burglary of a retail store in Springfield known as "Whitacre Pharmacy," and had been sentenced to Mansfield Reformatory for an indeterminate term of one to twenty years.

These witnesses testified that they, and a fourth boy named Arnold Kumler, had driven to Springfield in two stolen automobiles, broken into said store after midnight, and had taken seventy cartons of cigarettes, four cameras, twelve watches, billfolds, lighters and a safe and contents.

These witnesses also testified that they had placed the stolen property in a carton and brought the carton and safe back to Dayton the same night and hid the carton and safe in the brush near Drexel Jungles; that later in the morning, about six-thirty, three of the boys, Walters, Kraft and Fry, went to defendant's home in Walters' automobile; that Walters went inside, talked with defendant, and in a short time returned and said to his companions to "go get the box."

The evidence offered by the State further shows that the carton was brought to defendant's home, placed on the front porch and covered with pieces of carpet; that defendant gave the boys $54.00 to apply on the cartons of cigarettes at the price of $1.00 per carton. The boys also testified that they opened the safe, took a number of small bottles of narcotics therefrom and placed them into the carton, and the money in the safe was divided among them.

Further testimony offered by the State tended to show that defendant arranged to have the carton taken from her home to the premises of one Harold Crow, who lived in a trailer near defendant's home; that the carton was discovered by Crow in the back seat or trunk of an old automobile which he had on his premises, and at that time the box had some rags on top; that he saw some little bottles in the carton, which he later, on Saturday night, gave to one Frank Smith; that he also saw in the box some cigarettes and that he took the carton into the trailer and placed it under the couch, where the police later found it.

The State's evidence further tends to show that following defendant's arrest at her home, and on the way to the station, she attempted to conceal three watches in the back seat of the police car where she

was sitting and which she had taken from her hand bag. Later these watches were identified by the proprietor of the Whitacre Pharmacy as three of the watches taken from his store.

The testimony offered by the State in many material respects was denied by defendant and her husband in the course of their testimony and defendant denied any knowledge that the carton and contents had been brought to her residence. The defendant admitted having previously purchased cartons of cigarettes from Walters, Fry and Kraft on four or five occasions at the price of $1.00 per carton.

The defendant also testified that she knew the three boys and had seen them at her place of business; that she had known the Walters boy since he was six years old; that he had visited in her home, and that the three boys were guests for Thanksgiving Day dinner, at which time Walters had given her the three watches as a present for the grandchildren.

The evidence offered by defendant tended to show that she and her husband were industrious and frugal people and were generous, charitable and hospitable toward others in their home life.

The evidence in this case was in sharp conflict on the material issues of fact. Under these circumstances it was for the jury to judge the credibility of the witnesses and the weight of the evidence. Moreover, evidence offered by the State was substantial and the jury, having returned a verdict of guilty, must have determined that the State's witnesses testified truthfully in support of the indictment returned against defendant.

The rule is uniformly recognized that, where there is a conflict of evidence, the verdict of the jury will not be set aside by a reviewing court unless it is manifestly against the weight of the evidence, or unless the evidence weighs against the verdict so strongly as to indicate that the jury was moved by passion or prejudice in returning the verdict.

The Court has considered each of the assignments of error relied on by defendant and has reached the conclusion that the verdict is supported by substantial evidence and that defendant had a fair trial.

It should also be noted that the issues raised on the indictment and the evidence were ably presented to the court and jury by learned counsel and that the numerous questions raised during the trial were each carefully and judiciously considered by the trial court in protecting the rights of defendant. In the light of the whole record the errors, if any, that may have intervened in the extended and hotly contested trial do not appear to have been prejudicial to the defendant.

It is the conclusion of this Court that no error prejudicial to the defendant affirmatively appears on the record and that the defendant has had a fair trial. Under the statutory rule, the judgment of the trial court should be affirmed.

Judgment affirmed and cause remanded for execution of sentence.

HORNBECK and WISEMAN, JJ, concur.